UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LASHUN T. MCGEE, SR.,

    Petitioner,

v.                                    Case No. 02-C-1168

MATTHEW J. FRANK
Secretary of the Department of Corrections,

    Respondent.

## ORDER DENYING PETITION FOR HABEAS CORPUS

On December 2, 2002, Lashun T. McGee, Sr. ("McGee"), a prisoner incarcerated pursuant to a state court judgment, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This court screened McGee's petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases and ordered the respondent to answer the petition. The parties have consented to the full jurisdiction of a magistrate judge. The pleadings on McGee's petition are closed and the matter is ready for resolution.

McGee asserts five grounds for relief: (1) his guilty plea was not knowingly and intelligently made; (2) the government's failure to disclose exculpatory information induced his guilty plea; (3) he received ineffective assistance of trial counsel; (4) there was no factual basis for his guilty plea; and (5) he was improperly denied an evidentiary hearing on the issue of prosecutorial vindictiveness.

The respondent answers this petition by arguing that the state court decisions rejecting these claims were not clearly contrary to, or unreasonable applications of, federal law as established by the United States Supreme Court. Each of the petitioner's contentions shall be addressed in turn.

## STANDARDS OF REVIEW

Where the state court adjudicates the merits of a petitioner's claim, this court may grant habeas corpus relief if the state court decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As the Supreme Court explained in Williams v. Taylor, § 2254(d)(1) establishes two independent grounds on which a federal court can grant habeas corpus relief: (1) if a state court decision is "contrary to" clearly established federal law, as determined by the Supreme Court, or (2) if a state court decision involves an "unreasonable application" of clearly established federal law, as determined by the Supreme Court. 529 U.S. 362, 404-05 (2000); see also Washington v. Smith, 219 F.3d 620, 627-28 (7th Cir.2000). The "contrary to" standard requires a state court decision to be "substantially different from the relevant precedent of [the Supreme Court]." Williams, 529 U.S. at 405. For example, a state court decision applying a rule that contradicts the governing law set forth by the Supreme Court would qualify, as would a decision that involves a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result. Id. at 405-06. By contrast, a state court decision that draws from Supreme Court precedent the correct legal rule and applies it in a factually distinguishable situation will not satisfy the "contrary to" standard, no matter how misguided the decision's ultimate conclusion. Id. at 406-07.

Under the "unreasonable application" prong of (d)(1), relief may be granted if the petitioner shows that, despite identifying the correct rule of law, the state court unreasonably applied it to the facts of the case. Williams, 529 U.S. at 404. An unreasonable application of federal law, however, is different from the incorrect or erroneous application of federal law. Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (citing Williams, 529 U.S. at 410). A federal court simply disagreeing with the

state court decision does not warrant habeas relief-the decision's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

Under section 2254(d)(2), relief may be had where the petitioner demonstrates that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Here again, an unreasonable determination is more than a determination that is simply incorrect or erroneous. Moreover, state court factual determinations are presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by "clear and convincing evidence." § 2254(e)(1). Rice v. Collins, --- U.S. ---, 126 S.Ct. 969, 974 (2006) (citing Miller-El v. Dretke, 545 U.S. ----, ----, 125 S.Ct. 2317, 2325 (2005)).

And finally, if the petitioner demonstrates constitutional error under section 2254(d), he still may not be entitled to habeas relief where such error is deemed harmless; that is, the error could not have had a substantial and injurious effect or influence on the jury's verdict. O'Neal v. McAninch, 513 U.S. 432, 436 (1995) (internal citations omitted).

With the § 2254(d) and (e)(1) standards in mind, the court will now turn to the three challenges raised by McGee.

## ANALYSIS

### Guilty Plea

The following relevant facts were set forth in the Wisconsin Court of Appeals' unpublished opinion:

> On September 5, 1996, McGee's three-year-old son was shot in the head with a .38 caliber revolver. The child died as a result of the gunshot wound.
> McGee told the police that only he and his son were present in his basement bedroom when his son was shot. He said that he had gone to sleep with the gun next to him and that he woke up when he heard the gun being fired. He then saw his son bleeding from his forehead and found the gun next to him. McGee said that he took his son upstairs and put him on the living room couch while he went to get a towel to place on his son's head. The child fell off of the

couch while McGee was getting the towel. McGee said that when he returned, he put his son back on the couch and called 911; he then attempted to perform cardiopulmonary resuscitation on his son.

McGee also told the police that he took the gun that his son had been shot with and fired a shot through his bathroom window to make his son's shooting look like a drive-by shooting. He said that he then hid the gun in the attic of his home. McGee said that he also hid the sheet from his bed, which had his son's blood splattered on it.

McGee was originally charged with first-degree reckless homicide. At the preliminary hearing, the medical examiner testified that it was highly unlikely that McGee's son shot himself. He testified that the wound to the child's forehead was a contact wound, and that the trajectory of the bullet was nearly horizontal through the center of the child's forehead. He testified that the child's hands and arms were not large enough to place the gun in that position. The medical examiner also testified that the child would not have been able to fire the revolver.

Thereafter, McGee entered a plea bargain with the State and pled guilty to one count of neglecting a child with death as a consequence and one count of physical abuse of a child. Prior to the plea, the State explained that it was amending the information to reflect the plea-bargained charges because there was evidence supporting McGee's claim that his son shot himself. Specifically, the State explained that although the medical examiner had testified that it was highly unlikely that the child shot himself, two of the State's ballistics experts believed that it was possible for McGee's son to have shot himself. Further, McGee's son had gunshot residue on his hands. The State acknowledged that this evidence weakened its case against McGee, but concluded that the amended charges should be filed against McGee because he had made the gun accessible to his son, he had implicated himself as culpable in the shooting by hiding the evidence relating to the shooting, and he had failed to provide prompt aid to his son after the shooting.

The trial court questioned McGee regarding his understanding of the plea bargain, and confirmed that McGee knew that the court was not bound by the negotiated sentencing recommendation. The trial court further questioned McGee regarding his understanding of the information set forth in the guilty plea questionnaire and waiver of rights form. Finally, the trial court confirmed with McGee's attorney that he had reviewed the form with McGee. The trial court then accepted McGee's guilty pleas.

At sentencing, the State reiterated that its ballistics experts believed that McGee's son could have shot himself, but that McGee's convictions were nonetheless justified because McGee left the loaded gun where his son could get it and had acted culpably after his son was shot. The State further revealed that its ballistics experts had met with the medical examiner and showed him how McGee's son could have pulled the trigger on the revolver, and that the medical examiner then conceded that it was possible that the child could have pulled the trigger.

State v. McGee, 2000 WI App 71, ¶¶ 2-8, 234 Wis. 2d 150, 610 N.W.2d 511 (footnote omitted) (No. 98-3012-CR) (February 15, 2000).

McGee argues that his guilty plea was defective because neither the plea questionnaire nor the trial court set forth the elements of the crimes charged. The respondent argues that the court of appeals reasonably and correctly determined that McGee's plea was knowing and voluntary.

The Supreme Court has held that a guilty plea is valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970). After reviewing the transcript of the plea hearing, in the record as Exhibit J to the respondent's answer, it is clear to this court that McGee was appropriately informed as to the factual basis for his plea. Immediately prior to McGee's plea, the prosecutor explained to the court the factual basis for the amended information, to which the defendant pled guilty. Additionally, during the plea colloquy, the court asked McGee if he understood the elements of each offense. (Exhibit J 8:19-21.) McGee responded, under oath, that he understood the elements. (Exhibit J 8:22.) Finally, the defendant, through his attorney, stipulated that the complaint and the preliminary hearing testimony would serve as the factual basis for the plea. (Exhibit J 9:23-10:4.)

Therefore, this court cannot say that the court of appeals' decision was clearly contrary to, or an unreasonable application of, federal law as established by the United States Supreme Court.

**Exculpatory Information**

McGee argues that he was never provided information that supported the conclusion that his son had shot himself and that the prosecution's failure to disclose this information induced his guilty plea. The respondent argues that the court of appeals' decision holding that the prosecution had properly disclosed exculpatory evidence was not clearly contrary to, or an unreasonable application of, federal law as established by the United States Supreme Court.

The transcript of the plea hearing clearly demonstrates that at least immediately before McGee entered his plea, the prosecution revealed the fact that certain experts believed that it was

possible that the three-year-old had shot himself. (Exhibit J 3:8-17.) Although this court is not presented any specific evidence to indicate that the exculpatory evidence was disclosed any earlier than the moments before McGee entered his plea, the circumstances strongly indicate that this exculpatory information was disclosed substantially earlier. This is because this exculpatory information formed the basis for the amended information and the plea bargain.

In any event, McGee did not present to the court of appeals, nor does he present to this court, any explanation as to how this alleged failure to disclose exculpatory information resulted in prejudice to him. McGee simply argues that this evidence would have demonstrated that he did not kill his child. But McGee was not convicted of murder; rather, he was convicted of neglecting a child with death as a consequence, for his leaving a loaded firearm accessible to his three-year-old son, and physical abuse of a child, for leaving a loaded gun within the reach of the three-year-old child and for his failure to promptly seek help for his injured child. Thus, his convictions were based upon a course of conduct that did not presume that he actually shot his son. Therefore, this court cannot say that the court of appeals' decision was clearly contrary to, or an unreasonable application of, federal law as established by the United States Supreme Court.

**Ineffective Assistance of Counsel**

McGee argues that his trial counsel was ineffective because he failed to require the prosecution to turn over exculpatory information and because counsel failed to discuss the specific elements of the charges he was pleading guilty to.

To prevail on an ineffective-assistance-of counsel-claim, a petitioner must demonstrate that the Wisconsin courts' decision was either contrary to, or the based on an unreasonable application of, federal law. Williams v. Davis, 301 F.3d 625, 631 (7th Cir. 2002) (applying § 2254(d)(1) standards). The applicable federal law governing ineffective assistance claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires the petitioner to show (1) his

6

attorney's performance fell below an objective standard of reasonableness, and (2) the deficient performance caused him prejudice. 466 U.S. at 687-88 (1984); Roche v. Davis, 291 F.3d 473, 481-82 (7th Cir.2002); Montenegro v. United States, 248 F.3d 585, 590 (7th Cir. 2001). Courts review counsel's performance under the first prong deferentially, presuming reasonable judgment unless the factual record rebuts such a presumption. See Strickland, 466 U.S. at 689; Matheney v. Anderson, 253 F.3d 1025, 1039 (7th Cir.2001).

With regard to the prejudice element, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. See Strickland, 466 U.S. at 689; Matheney, 253 F.3d at 1039-40. If the court finds that the counsel's alleged deficiency did not prejudice the defendant, under the second prong, the court does not need to consider the first prong of the Strickland test. Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003).

The court of appeals held that McGee's counsel was not ineffective because McGee was properly informed of the exculpatory evidence before he entered his guilty plea. McGee, ¶26. Additionally, the record refutes McGee's claim that his attorney did not discuss with him the elements of the crimes and the consequences of his guilty plea. Id. "McGee testified under oath at his guilty plea hearing that he had reviewed the guilty plea questionnaire and waiver of rights form with his attorney, and that he understood the elements of the offenses and the facts set forth in the criminal complaint related to those offenses." Id.; see also Exhibit J 7:18-8:25.

McGee does not present any argument as to how this decision is clearly contrary to, or an unreasonable application of, federal law as established by the United States Supreme Court. Rather, McGee merely reargues the issues presented to the court of appeals. Therefore, this court must reject McGee's claims.

**Factual Basis for Plea**

McGee argues that the record did not support the prosecution's assertion that he did not render aid to his child. Specifically, McGee points to the fact that he called the police and attempted to resuscitate his child. However, McGee fails to mention the additional facts in the record that state that he then ceased aiding the child and proceeded to go outside and fire a shot through the window, dispose of a blood-splattered sheet, and hide the gun, all in an effort to create the impression that the child was shot in a drive-by shooting. (Exhibit K 12:12-16:10.)

However, it is unclear what is the significance of McGee's inaction. It is does not appear that the court of appeals relied upon McGee's inaction as the basis for his conviction. Rather, it appears that the court of appeals regarded McGee's act of leaving a loaded firearm accessible to a three-year-old child as an act of child abuse. <u>McGee</u>, ¶30. McGee did not argue to the court of appeals that there was no factual basis for his conviction of child neglect. McGee does not argue, nor could he, that there are insufficient facts in the record to support the conclusion that McGee slept with a loaded firearm accessible to his three-year-old son. Therefore, McGee's argument that there is an insufficient factual basis for his guilty plea must fail.

**Evidentiary Hearing**

McGee alleges he was improperly denied an evidentiary hearing on the issue that the prosecution was vindictive because the state sought to increase the charges in an effort to induce him to plead guilty. However, this court is unable to consider this claim for two reasons. First, McGee does not present a cognizable constitutional claim regarding the trial court's denial of an evidentiary hearing. Second, this court has not been presented with any decision of the court of appeals indicating that this issue has been considered by it. McGee argues that the issue was presented to the trial court but he makes no assertions regarding its presentation to the court of appeals. The respondent argues that this issue was presented to the court of appeals but the court of

appeals the rejected the claim on the basis that it was not properly presented to the trial court, thereby permitting McGee to proceed in the trial court and then return to the court of appeals. However, this September 5, 2002 decision of the court of appeals is the most recent court of appeals decision in this case. If McGee ever properly presented this matter to the trial court, it is clear that he never presented it to the court of appeals. Therefore, McGee has failed to exhaust his state remedies and this court is unable to consider his claim. See 28 U.S.C. § 2254(b)(1)(A).

**IT IS THEREFORE ORDERED** that McGee's petition for a writ of habeas corpus is **denied** and this case is **dismissed** on its merits.

Dated at Milwaukee, Wisconsin, this 11th day of September, 2006.

s/AARON E. GOODSTEIN
United States Magistrate Judge